IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| **THE GUARANTEE COMPANY OF NORTH AMERICA USA,** | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. _____ |
| **PADGETT, STRATEMANN & CO., LLP,** | § § § | |
| Defendant. | § § § § | |

## ORIGINAL COMPLAINT

Plaintiff, The Guarantee Company of North America USA ("GCNA" or the "Surety") files this its Original Complaint against Defendant, Padgett, Stratemann & Co., LLP ("Padgett"), and respectfully states:

### I.
#### PARTIES

1. GCNA is a Michigan corporation with its principal place of business in Southfield, Michigan. GCNA is authorized to do business in the State of Texas.

2. Padgett is a Texas limited liability partnership with its principal place of business in San Antonio, Texas. Padgett may be served through its registered agent, John E. Wright, at 100 N. E. Loop 410, Suite 1100, San Antonio, Texas 78216.

### II.
#### JURISDICTION

3. Jurisdiction is predicated on 28 U.S.C. § 1332. The parties are diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

___
**ORIGINAL COMPLAINT**  Page 1

### III.
### VENUE

4.   Venue is proper in this district under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the GCNA's claim occurred in this district.

### IV.
### FACTUAL BACKGROUND

**Texas Descon Needed Audits to get Bonding and do Business in Texas**

5.   Texas Descon, L.P. ("Descon") was predominantly a general contractor/construction manager on public works projects in the State of Texas. The public owners of these public works projects were generally municipalities and school districts.

6.   Under the Texas Government Code, contractors on public works projects are required to secure payment and performance bonds from a corporate surety authorized to do business in Texas. TEX. GOV'T CODE § 2253.021; *see also* TEX. INS. CODE § 3503.002.

7.   It is an industry-wide requirement that contractors provide audited financial statements as a pre-requisite to obtain bonding. *See* 4 PHILIP L. BRUNER & PATRICK J. O'CONNOR, JR., BRUNER & O'CONNOR ON CONSTRUCTION LAW § 12:11 (West 2002 & Supp. 2008) ("The surety's underwriting process includes a review of past financial statements (usually from the last 3 to 5 years) . . . . The contractor must have . . . a competent certified public accounting firm with substantial knowledge and experience in the field of construction and accounting . . . .") (internal citations omitted); Stewart R. Duke et al., *Ch. 4*, *How Contract Surety Bonds Are Underwritten in* THE LAW OF SURETYSHIP 49, 51-56 (Edward G. Gallagher ed., 2d ed., Am. Bar. Ass'n 2000) ("The first step in the actual prequalification process begins with the contractor's selection of a qualified, construction oriented CPA firm, a firm that fully understand the intricacies of construction accounting . . . . The truly professional construction CPA concentrates on contractors and is closely

___

allied with the contractor's bonding company and bank . . . . At last three prior fiscal year end financial statements are most frequently requested by the bonding company.").

8. Construction companies are also subject to standards and scrutiny by public owners. If contractors were not required to provide audited financial statements, CPA firms – including Padgett – would experience a loss in revenue.

**Padgett Knew Bonding Companies would Receive and Rely on Descon's Audit**

9. Padgett prepared audits for Descon, including but not limited to an audit for Descon's balance sheet as of December 31, 2011 & 2010 (the "2011 Audit"); December 31, 2012 and 2011 (the "2012 Audit"); and December 31, 2013 and 2012 (the "2013 Audit").[1] Padgett charged Descon thousands of dollars to provide the Audits. The Audits were sent to Descon in McAllen, Texas where Descon was headquartered. Padgett may have also performed audits of Descon's financial statements for previous fiscal years.

10. Padgett intended to supply audits, including the Audits, to Descon's bonding company or knew that Descon intended to supply audits, including the Audits, to its bonding company.

11. Padgett intended for the bonding company to rely on Padgett's audits, including the Audits, in issuing bonds for various projects, including those which Descon won in the competitive bidding process.

12. Padgett's knowledge of sureties and the reliance in the surety industry on audited financial statements is revealed by its own literature:

    a. Padgett notes that its Construction section offers "knowledge to help our contractor

---

[1] The 2011 Audit, 2012 Audit, and 2013 Audit are collectively referred to as the "Audits."

_____
**ORIGINAL COMPLAINT**                                                      **Page 3**

  clients improve their bonding and state bidding capacity . . ."[2]

 b. Leslie Guajardo, a member of the Construction section, has authored an article entitled *Are You Taking Your Surety for Granted?*[3] In this article, Guajardo notes that "[t]he key to attaining higher bonding, then, is to have a well-established, ongoing relationship with the surety. On a regular basis contractors should provide their bonding agent well-developed financial statements . . . ."

 c. In another article, Guajardo comments that "[a]s most Texas contractors can attest, sureties . . . are heavily scrutinizing the working capital of their clients."[4] She then goes on to identify a formula of bonding capacity provided by sureties that is keyed off of working capital.

 d. Guajardo has written another article where she advises that "[c]ontractors should begin their software search by visiting with their CPA and surety."[5]

 e. Padgett also published a newsletter that detailed "5 tips for showing you're 'bond worthy.'"[6] Among the tips, Padgett recommended that the contractor "make a strong statement." Padgett explained that "[y]our company may be financially healthy. But, if you can't demonstrate this to your surety, obtaining bonds will be a challenge." Padgett ended the tips by proclaiming "Work with your CPA to discover other ways to build your surety's confidence in your business."

 f. Padgett published another article focused on profit fade. The takeaway offered by

---

[2] Padgett's profile of its Construction section is attached hereto as Exhibit "1" and is incorporated by reference in its entirety.
[3] This article is attached hereto as Exhibit "2" and is incorporated by reference in its entirety.
[4] This article, *Working Capital Critical to a Contractor's Success*, is attached hereto as Exhibit "3" and is incorporated by reference in its entirety.
[5] This article, *Software Selection Often Confusing*, is attached hereto as Exhibit "4" and is incorporated by reference in its entirety.
[6] This newsletter is attached hereto as Exhibit "5" and is incorporated by reference in its entirety.

---

**ORIGINAL COMPLAINT**  Page 4

Padgett was that "[b]y adhering to the advice offered in this article, you'll make your surety more confident in your ability to make a profit."[7]

**Padgett's Representations in The Audits were False and/or Misleading**

13. Padgett represented that it had the expertise of a reasonable and prudent CPA in the performance of the professional audit for construction companies like Descon. Padgett knew that the integrity of the financial audit depended upon an accurate evaluation of Descon's finances. Padgett failed to meet the standard of care in its audits of Descon's financial statements, including the Audits.

14. Padgett made the following representations in the 2013 Audit:

> We conducted our audits in accordance with auditing standards generally accepted in the United States of America . . . . In our opinion, the financial statements referred to above present fairly in all material respects, the financial position of Texas Descon, L.P. as of December 31, 2013 and 2012, and the results of its operations and its cash flows for the years then ended, in conformity with accounting principles generally accepted in the United States of America.[8]

15. These representations, among others, by Padgett in the Audits were false and/or misleading.

16. Padgett, among other things, failed to: (a) properly plan the Audits and/or test; (b) obtain sufficient competent evidence through inspection, observation, or inquiries, and confirmations to afford a reasonable basis for its opinions; (c) obtain sufficient audit evidence by performing appropriate audit procedures; (d) properly audit Descon's underbillings; (e) properly test Descon's ability to estimate percentage of completion and costs to complete; (f) retain appropriate consultants to assist with the audit; (g) properly audit Descon assets, including inventory, land, and materials; and (h) properly audit Descon's individual construction contracts.

---
[7] This newsletter is attached hereto as Exhibit "6" and is incorporated by reference in its entirety.
[8] Padgett made the same representations in the 2011 Audit and 2012 Audit.

---
**ORIGINAL COMPLAINT**                                                                 Page 5

17. This failure to meet the standard of care ultimately resulted in GCNA issuing bonds it would not otherwise have written had the Audits provided by Padgett met the standard of care.

18. GCNA seeks to recover its losses on the bonds that it would not have issued had the 2013 Audit by Padgett met the standard of care, which are in excess of the minimum jurisdictional limits of this Court.

## V.
### CONDITIONS PRECEDENT

19. All conditions precedent to recovery by GCNA from Padgett have occurred or have been performed.

## VI.
### CAUSE OF ACTION - NEGLIGENT MISREPRESENTATION[9]

20. GCNA incorporates herein by reference, as if fully set forth, the allegations above.

21. Padgett made representations in the 2013 Audit.

22. These representations were made by Padgett in the course of its business or in a transaction in which it had a pecuniary interest.

23. Padgett intended to supply audits, including the 2013 Audit, to Descon's bonding company or knew that Descon intended to supply audits, including the 2013 Audit, to its bonding company.

24. Representations made by Padgett in the 2013 Audit were false and/or misleading.

25. Padgett failed to conduct its audits, including the 2013 Audit, under recognized accounting standards.

26. Padgett failed to exercise the reasonable care or prudence that a competent certified

---

[9] To the extent necessary, GCNA pleads the discovery rule.

_____
**ORIGINAL COMPLAINT**                                                                                          **Page 6**

public accountant would have used in preparing its audits of Descon, including the 2013 Audit.

27. GCNA justifiably relied upon Padgett's 2013 Audit in issuing bonds on behalf of Descon.

28. GCNA suffered pecuniary losses on these bonds that it would not have issued had Padgett's 2013 Audit not been false and/or misleading.

29. GCNA seeks to recover these pecuniary losses.

## VII.
### REQUEST FOR RELIEF

For the foregoing reasons, The Guarantee Company of North America USA, respectfully requests that Padgett, Stratemann & Co. LLP be cited to appear and answer herein and, upon final trial thereof, that the GCNA receive:

1. Judgment in the amount of damages incurred by GCNA;
2. Pre-judgment and post-judgment interest at the maximum permissible at law or in equity;
3. Costs of court; and
4. Such other and further relief to which the GCNA is justly entitled.

Respectfully submitted,

**WEINSTEIN RADCLIFF PIPKIN LLP**

*/s/ Gregory M. Weinstein*
Gregory M. Weinstein
State Bar No. 21096430
Robert K. Radcliff
State Bar No. 24011170
8350 N. Central Expressway, Suite 1550
Dallas, Texas 75206
214-865-6126 Telephone
214-865-6140 Facsimile
gweinstein@weinrad.com
rradcliff@weinrad.com

___

**ATTORNEYS FOR GUARANTEE COMPANY OF NORTH AMERICA USA**

_____